419 F.2d 491
 Joseph P. KELSEY
v.
PHILADELPHIA LOCAL NO. 8 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, Appellant.
 No. 17760.
 United States Court of Appeals Third Circuit.
 Argued September 23, 1969.
 Decided December 15, 1969.
 
 Kingsley A. Jarvis, Norristown, Pa. (John M. Hickey, Upper Darby, Pa., on the brief), for appellant.
 Edward B. Bergman, Solo, Abrams, Bergman, Trommer & Podova, Philadelphia, Pa., for appellee.
 Before HASTIE, Chief Judge, and McLAUGHLIN and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 GERALD McLAUGHLIN, Circuit Judge.
 
 
 1
 This is an appeal from a district court judgment in favor of plaintiff as a union member against his union, under the Labor-Management Reporting and Disclosure Act of 1959 (Bill of Rights of Members of Labor Organizations), 29 U.S.C.A. Section 411 et seq.
 
 
 2
 In 1966 appellee, then vice president of the defendant-appellant union, as a member of the union was head of its carpentry department at Convention Hall, Philadelphia. The union work there for extra men was of a temporary nature. From February 1966 through part of November that year plaintiff as a department head supervised the carpentry work of the extra men. On November 19th, the person who had displaced him as carpentry head, told him that he was not going to work during rehearsals. On November 26 plaintiff went to the union office to discuss with secretary-treasurer Sinker the fact of not having been assigned work. The latter testified in the district court hearing that he told plaintiff that he, Sinker, might have made a mistake in not assigning work to plaintiff. After some more talk between them, as the trial judge found:
 
 
 3
 "Kelsey claims that Sinker came around from behind his desk, and, thinking that this was a threatening move on Sinker's part, he asked Sinker if he wished to go outside, presumably to fight, and thus intended no aggressive act himself." (Emphasis supplied.)
 
 
 4
 The court also stated that "Sinker claims that Kelsey threatened him saying, `I will take you downstairs and fix you up. I will fight you.'" Thereafter, as the court said, "Sinker filed charges against Kelsey for `conduct unbecoming an officer', in that Kelsey had allegedly threatened him with bodily harm, trying to intimidate him."
 
 
 5
 Kelsey was suspended as vice president and notified to appear before the union executive board on December 17, 1966. The board found him guilty of the charges. The membership on January 4, 1967 approved that finding. Kelsey appealed to the International union body. The latter held that the charges presented no grounds against Kelsey as a union officer but rather came under the union constitution provision regarding the discipline of members. Charges were refiled. This time they consisted of allegations, first by the union president Wynn that Kelsey had used loud and abusive language and second the Sinker claim that Kelsey had threatened him with bodily harm. The union found Kelsey guilty of both charges. He appealed to the International. The latter decided that the Wynn allegations had not been established and upheld the appeal as to these. On the Sinker charges, the entire finding is as follows:
 
 
 6
 "With respect to the charges by Brother Sinker, we find that the evidence and testimony is sufficient to support the same. We note that, in effect, the accused admitted that he invited Brother Sinker to step outside presumably to attack or fight him on account of Union business. Accordingly, the appeal from the conviction on these charges is denied."
 
 
 7
 The above three sentences cannot possibly be misunderstood. The first is merely a generality. The second sets out the sole specific union appellate reason for affirming the Sinker charge. It holds that in effect Kelsey "admitted that he invited Brother Sinker to step outside presumably to attack or fight him on account of Union business." "Accordingly," states the conclusion, "the appeal from the conviction on these charges is denied." (Emphasis supplied.) In this entire record there is no such "in effect" or otherwise admission by Kelsey. The latter said from the beginning, regarding the episode involved, as above mentioned, "that Sinker came around from behind his desk, and, (Kelsey) thinking that this was a threatening move on Sinker's part, he asked Sinker if he wished to go outside, presumably to fight, and thus intended no aggressive act himself." (Emphasis supplied.)
 
 
 8
 What has amazingly happened here is that the International union appellate tribunal has upheld Kelsey's conviction in the Sinker matter on its affirmative finding of completely non-existent Kelsey testimony. Kelsey never made the statement attributed to him. All he said, as Sinker in a threatening move came at him from behind his (Sinker's) desk was, that "he asked Sinker, if he wished to go outside, presumably to fight * * *" which as the trial judge rightfully concluded "thus intended no aggressive act himself."
 
 
 9
 The decision of the International depends on Kelsey's recorded testimony. If he did admit that he invited Sinker outside presumably to attack or fight him, the International has some excuse in the record for its affirmance of the conviction. However, nothing in the transcript of the union trial or of the district court hearing where both Kelsey and Sinker testified, warrants any such finding. On the contrary, to necessarily repeat, because of Sinker's threatening move, what Kelsey said and all that he did say was that "he asked Sinker if he wished to go outside * * *." (Emphasis supplied.) Therefore the only expressed reason by the union appellate tribunal for affirming the conviction was a grossly wrong version of Kelsey's evidence. Appellant's brief makes no attempt to bolster the misstated version of the Kelsey evidence. Indeed, the brief never mentions it. Actually the brief categorically admits (p. 2) that Kelsey did testify "that it was the Secretary-Treasurer (Sinker) who suggested they go outside." And appellant does flatly concede in said brief that the trial judge found Sinker's testimony of what Kelsey said and did, to be incredible. We agree with that concession and further rule that the trial court was justified by the whole record in so viewing the Sinker evidence. The court ever so mildly commented that "Mr. Sinker is obviously a sensitive and emotional man, whose emotion occasionally gets the better of him. It is this factor, I believe, rather than lack of candor, which prevented him from responding fully and precisely to some of the questions asked of him while he was on the witness stand."
 
 
 10
 Based as it was upon the Sinker evidence, the initial union decision in favor of the Sinker charges is left without appropriate evidentiary support. The International appellate affirmance of the union decision has as its named foundation, language and motivation erroneously set out in said affirmance as admissions on the part of Kelsey. The only other possible source of reliance for the International finding is the Sinker testimony which the trial court held to be incredible. As we have mentioned, that view is amply borne out by the record. There was no other evidence accepted by the union appellate tribunal with respect to the Sinker issues. In the final posture of the whole controversy as now before us, obviously the district court was entitled on the record to disregard Sinker's story as lacking in credibility. There remained no foundation in the evidence presented in the district court or in the prior union trial supporting the charge. The union appellate affirmance of the said charge must also fall. On its face it depended upon alleged admissions by Kelsey which were never made. If it can be fairly urged that the affirmance in addition was entitled to depend on Sinker's testimony, the latter is of no help since it was properly considered unbelievable by the trial judge. That testimony comprised all the evidence against Kelsey having to do with the one charge that the International allowed to stand. With that testimony eliminated there was nothing in the record that could possibly justify affirmance of the Sinker accusations. In the situation the district court correctly ruled that Kelsey's conviction on the Sinker charges was in violation of Kelsey's rights under Section 101(a) (2) of the Labor Management Reporting and Disclosure Act, 29 U.S.C.A. § 401 et seq. (1959).
 
 
 11
 There was some dicta by the court below dealing with a theoretical situation that might arise as the judge said "Even if I were to find Sinker's testimony 100 per cent credible * * *." There is no need or use of any discussion whatsoever by us regarding that hypothetical proposition.
 
 
 12
 We have considered all other arguments advanced for appellant. We find these to be without merit.
 
 
 13
 The judgment of the district court will be affirmed.